J. S61004/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| GERALD MAR, | : | No. 740 WDA 2013 |
| | : | |
| Appellant | : | |

Appeal from the PCRA Order, April 13, 2013,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0011935-2006

BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND STRASSBURGER,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED DECEMBER 03, 2014**

Gerald Mar appeals from the order denying his first petition for post-conviction relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  Appellant's counsel has filed an application to withdraw and an appellate brief pursuant to **_Anders v. California_**, 386 U.S. 738 (1967).  Upon careful consideration, we grant counsel leave to withdraw and affirm the order denying PCRA relief.

Appellant was convicted of multiple crimes in connection with a robbery.  On direct appeal, this court affirmed, and summarized the facts of this case as follows:

> On July 23, 2006, Lloyd H. and Daniel H. were working at the Family Dollar store located in the East Liberty section of Pittsburgh.  At approximately 9:30 a.m., Appellant and his accomplice, Jamal Jacobs, entered the store armed with guns

_____

* Retired Senior Judge assigned to the Superior Court.

and wearing close-fitting caps and masks that covered the lower portion of their faces but exposed their eyes and noses. N.T. Trial, 3/23-24/10, at 55. Appellant placed his weapon against Lloyd H.'s head while Jacobs pointed his gun at Daniel H., who was near the store's safe. Appellant said, "If you don't open up the safe, I'm going to kill this f____r." *Id.* at 31. Daniel H. opened the safe, which had a delayed release mechanism so that it took approximately one minute to open after the code was entered. Daniel H. gave the two cohorts approximately $1,000 in cash, which they placed in a bag that they already possessed.

Once Appellant and Jacobs left, Lloyd H. followed them to see where they were headed, and Daniel H. immediately telephoned the police, who arrived within one minute of the robbery. Approximately thirty seconds after police arrived, Daniel H. saw Appellant and Jacobs "running back past the store again up the parking lot." *Id.* at 34. At that time, they were not wearing masks but had the bag with the cash.

Within five minutes of the criminal episode, Daniel H. was asked by police to identify two men, Appellant and Jacobs, who had been taken into custody. Daniel H. immediately identified them as the perpetrators of the crime and was positive that they were the two men who had just robbed the store. *Id.* at 35-36. Daniel H. explained that they were wearing the clothing worn by his assailants and that he had seen the eyes and nose structure of Appellant and his accomplice. *Id.* at 37, 38-39, 45. Daniel H. also confirmed that he was looking at Appellant directly during the minute that it took the safe to open, stating that he kept "looking over [at Appellant] because [Appellant was] yelling he is going to kill [Lloyd H.]." *Id.* at 45.

Christina R. was a customer in the store during the robbery and had her young daughter with her. She saw Appellant and Jacobs enter the store with guns and masks and immediately said to Appellant,

"[M]y daughter is in the store, please don't shoot." *Id.* at 62. Appellant responded, "We won't, we won't." *Id.* at 63. Christina R. heard Appellant threaten to kill Lloyd H. while holding a gun to his head and saw Daniel H. open the safe while Jacobs was pointing a gun at him. After the robbery, she stayed behind and also observed Appellant and Jacobs, who were unmasked, running through the parking lot of the Family Dollar soon after the crime. At trial, she identified Appellant as the man who held the gun to Lloyd H.'s head. *Id.* at 60.

Pittsburgh Police Sergeant James Kohnen testified as follows. He was in the vicinity when he received the report of the crime and a description of the perpetrators. As he was proceeding to Family Dollar, he saw two individuals matching the description of the robbers running toward a baseball field. Sergeant Kohnen exited his patrol car, gave chase, and continually broadcast his location and that of the criminals from his shoulder radio. Jacobs still had a gun and was holding the bag of cash. As the two men crossed the field, they fled in different directions. Sergeant Kohnen followed Jacobs, tackled him, and placed him under arrest.

About one and one-half blocks from the field, Appellant was apprehended by Sergeant Gordon McDaniel. Sergeant McDaniel entered the chase of the two suspects based upon the radio reports from Sergeant Kohnen. As Sergeant McDaniel proceeded in the direction that Appellant had been fleeing, a guard for a local church next to the baseball field exited the church and pointed in the direction of Larimer and Auburn Streets. That officer proceeded in that direction, where he was met by two other Pittsburgh police officers. They began to search the area, and Sergeant McDaniel discovered Appellant hiding under the crawl space of a porch. *Id*. at 107. Police forcibly removed Appellant from his hiding place and returned him to the baseball field, where Sergeant Kohnen positively identified Appellant as the man who was fleeing the scene of the crime with Jacobs. A cap, which was worn by the perpetrator

> who had placed the gun against Lloyd H.'s head, was underneath Appellant's person when he was apprehended in the crawl space. A videotape of the robbery was shown to jurors.

*Commonwealth of Pennsylvania v. Mar*, 30 A.3d 544 (Pa.Super. 2011) (unpublished memorandum at 1-4).

Following a jury trial on March 23-24, 2010, appellant was found guilty of one count each of robbery, serious bodily injury; violation of the uniform Firearms Act ("VUFA"), carrying a firearm without a license; recklessly endangering another person; and criminal conspiracy. On June 21, 2010, appellant was sentenced to a term of 5 to 10 years' incarceration for the robbery conviction, a consecutive term of 2 to 4 years' incarceration for the VUFA offense, and a consecutive 2-year probationary term for REAP. Appellant's aggregate sentence was 7 to 14 years. Post-sentence motions were denied, and appellant took a direct appeal. On May 20, 2011, this court affirmed the judgment of sentence. *Commonwealth v. Mar*, 30 A.3d 544 (Pa.Super. 2011) (unpublished memorandum). On September 28, 2011, our supreme court denied allowance of appeal. *Commonwealth v. Mar*, 30 A.3d 487 (Pa. 2011).

On February 28, 2012, appellant filed a timely *pro se* PCRA petition, and counsel was appointed. On June 4, 2012, counsel filed an amended petition on appellant's behalf, and an evidentiary hearing was held on March 18, 2013. On April 4, 2013, appellant's petition was denied. A timely

notice of appeal was filed on May 3, 2013. Appellant has complied with Pa.R.A.P. 1925(b), 42 Pa.C.S.A., and the PCRA court has issued an opinion.

On July 11, 2014, appointed counsel, Christy P. Foreman, filed a petition to withdraw and accompanying "**Anders** brief."[1] Appellant raises two issues for our review:

> 1. WHETHER THE PCRA COURT ERRONEOUSLY DISMISSED APPELLANT'S CLAIM THAT HIS PRIOR TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL APPELLANT'S CO-DEFENDANT, JAMAL JACOBS, AND FOR FAILING TO ADMIT JAMAL JACOB'S AFFIDAVIT, WHICH IN THE CIRCUMSTANCES OF THE PARTICULAR CASE, SO UNDERMINDED [SIC] THE TRUTH DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GUILT OR INNOCENCE COULD HAVE TAKEN PLACE[?]
>
> 2. WHETHER THE PCRA COURT ERRONEOUSLY DISMISSED APPELLANT'S CLAIM THAT THERE

---

[1] **See Anders v. California**, 386 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981). Counsel is apparently under the mistaken belief that **Anders** practice is appropriate for appointed counsel to withdraw on collateral appeal. **Anders** practice pertains to direct appeal; the appropriate practice for withdrawing from a collateral appeal is **Turner**-**Finley**. **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988) and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988)(**en banc**). **Commonwealth v. Widgins**, 29 A.3d 816, 817 n.2 (Pa.Super. 2011). We may accept an **Anders** brief in lieu of a **Turner**-**Finley** brief. **Widgins**, 29 A.3d at 817 n.2. We note that the **Widgins** court accepted the **Anders** brief on the theory that the appellant was afforded greater protection under it, ostensibly because under prior **Anders** practice, counsel was supposed to raise only issues of potential merit and was not to present any argument against his or her client. This practice was substantially changed by **Commonwealth v. Santiago**, 978 A.2d 349, 360-361 (Pa. 2009). Under **Santiago**, counsel must now explain in the **Anders** brief why the issues are frivolous. However, even in light of this changed **Anders** practice, we may still accept an **Anders** brief because **Santiago** simply made **Anders** practice more like **Turner**-**Finley** practice.

> WAS A VIOLATION OF THE CONSTITUTION OF THE COMMONWEALTH OR THE CONSTITUTION OR LAWS OF THE UNITED STATES, WHICH IN THE CIRCUMSTANCES OF THE PARTICULAR CASE, SO UNDERMINED THE TRUTH DETERMINING PROCESS THAT NO RELIABLE ADJUDICATION OF GILT [SIC] OR INNOCENCE COULD HAVE TAKEN PLACE[?]

Appellant's brief at 5.

Prior to addressing the underlying claims, we must resolve counsel's petition to withdraw. Our supreme court has stated, "independent review of the record by competent counsel is required before withdrawal is permitted." *Commonwealth v. Pitts*, 603 Pa. 1, 2 n.1, 981 A.2d 875, 876 n.1 (2009), citing *Turner*, *supra* at 494-495, 544 A.2d at 928. Independent review requires PCRA counsel to submit a no-merit letter that: (1) details the nature and extent of review; (2) lists the issues the petitioner wished to have reviewed; and (3) explains why counsel believes the issues are meritless. *Widgins*, 29 A.3d at 818, quoting *Pitts*, *supra* at 2 n.1, 981 A.2d at 876 n.1. This court must then conduct its own independent review of the record and agree that the petition is meritless. *Id.* Finally,

> PCRA counsel who seeks to withdraw must contemporaneously serve a copy on the petitioner of counsel's application to withdraw as counsel, and must supply to the petitioner both a copy of the "no-merit" letter and a statement advising the petitioner that, in the event that the court grants the application of counsel to withdraw, he or she has the right to proceed *pro se* or with the assistance of privately retained counsel.

*Id.*, quoting **Commonwealth v. Friend**, 896 A.2d 607, 614 (Pa.Super. 2006) (citation omitted). In this case, the foregoing requirements were met, and appellant has not responded to PCRA counsel's motion to withdraw. We now turn to an independent review of the issues presented to determine whether they have merit.

Initially, we recite our standard of review:

> This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Halley**, 582 Pa. 164, 870 A.2d 795, 799 n. 2 (2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. **Commonwealth v. Carr**, 768 A.2d 1164, 1166 (Pa.Super.2001).

**Commonwealth v. Turetsky**, 925 A.2d 876, 879 (Pa.Super. 2007), **appeal denied**, 940 A.2d 365 (Pa. 2007).

Herein, appellant argues that his trial counsel, Randall Ricciuti, Esq. was ineffective for failing to call his accomplice, Jamal Jacobs,[2] ("Jacobs") as a witness, or offer Jacobs' affidavit into evidence.

> [W]e begin with the presumption that counsel was effective. A claimant establishes ineffective assistance of counsel when he demonstrates that [1] the underlying claim is of arguable merit; [2] that counsel's action or inaction was not grounded on any reasonable basis designed to effectuate the appellant's interest; and finally, [3] that counsel's action or inaction was prejudicial

---

[2] We note that throughout appellant's brief, Jamal Jacobs is referred to as appellant's co-defendant. Because appellant and Jacobs were not tried together, we will refer to Jacobs as appellant's accomplice.

> to the client. For an action (or inaction) by counsel to be considered prejudicial to the client, there must be a reasonable probability that the outcome of the proceedings would have been different. All three prongs of this test must be satisfied. If an appellant fails to meet even one prong of the test, his conviction will not be reversed on the basis of ineffective assistance of counsel.

*Commonwealth v. O'Bidos*, 849 A.2d 243, 249 (Pa.Super. 2004), *appeal denied*, 860 A.2d 123 (Pa. 2004) (citations and internal quotation marks omitted).

> To establish ineffectiveness for failure to call a witness, Appellant must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for Appellant at trial; and (5) the absence of the testimony prejudiced Appellant so as to deny him a fair trial. A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness.

*Id.* (citations omitted).

The PCRA provides that "where a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony." 42 Pa.C.S.A. § 9545(d). Claims of ineffectiveness of trial counsel cannot be considered in a vacuum. *Commonwealth v. Durst*, 559 A.2d 504, 505 (Pa. 1989).

Instantly, the amended PCRA petition includes Jacobs as well as Attorney Ricciuti, Attorney James Sheets, and appellant as intended witnesses. (Document #53.) Attached to appellant's PCRA petition was a notarized statement dated January 4, 2007, signed by himself and Jacobs[3] which read:

> On date 07-23-06, Defendant Gerald Mar, was arrested on the following charges of robbery, v.u.f.a. and r.e.a.d. The defendant did not commit these charges and will plea not guilty at his hearing. The Defendants co-defendant, Jamal Jacobs, is will to testify on, Gerald Mar, behalf. Stating that he does not know defendant, Gerald Mar, personally nor did he take part in committing these alleged crimes.

Certified record, Document #48.

Appellant and Attorney Ricciuti were the only witnesses to testify at the March 18, 2013 PCRA hearing. Because appellant failed to present the testimony of Jacobs at the PCRA hearing, he was unable to prove that Jacobs was available to testify at his jury trial regarding the contents of the above-referenced notarized statement.[4]

---

[3] On July 24, 2008, Jacobs pled guilty for his participation in the robbery; he was sentenced on August 21, 2008.

[4] On cross-examination at the March 18, 2013 hearing, appellant admitted it was his idea to prepare and type the statement at the county jail law library, present it to Jacobs, ask him to sign it, and have it notarized. (Notes of testimony, 3/18/13 at 10-11.)

At the PCRA hearing, the following testimony was elicited from Attorney Ricciuti regarding Jacobs' testifying at appellant's trial and the notarized statement:

> [Counsel for appellant]: Did you have an occasion to -- did [appellant] ever bring to your attention having the co-defendant, Jamal Jacobs, testify at his trial?
>
> [Mr. Ricciuti]: Until you brought that up today, I only heard about it I think once, and I may have asked Jimmy Sheets, Attorney Jimmy Sheets about it.
>
> Question: How would he have been connected?
>
> Answer: I think he was representing him on another related matter.
>
> The Court: Who, Jamal Jacobs?
>
> Mr. Ricciuti: Jamal Jacobs.
>
> [Counsel for appellant]: You spoke to Mr. Sheets about it?
>
> [Mr. Ricciuti]: I think I did. I don't know if I made a jail visit to Mr. Jacobs. I think I may have talked to Mr. Sheets. It was only brought up once.
>
> Question: By who?
>
> Answer: [Appellant]. I never heard about it again during the trial or even just prior to the trial. For that reason I just assumed there was no merit to it.
>
> Question: Sir, I am handing you what has been marked for identification as Defense Exhibit A [the notarized statement]. Take a look at this.
>
> Answer: Okay.
>
> Question: Do you recognize it?

Answer: I don't recall seeing this, but I know what it is.

Question: Was this provided to you by the defendant prior to trial?

Answer: I do not recall, but as I stated before, it wasn't brought up. It wasn't stressed. It wasn't something that was, hey, what about this guy. If it was brought up, it was brought up once. I never heard about it again.

Notes of testimony, 3/18/13 at 3-4.[5]

Appellant testified he met with Attorney Ricciuti "probably four times" before his trial, and at some point, he indicated to him that he wished to have Jacobs testify on his behalf. (*Id.* at 8.)

In its Rule 1925(a) opinion, the PCRA court opined:

[G]iven that the proffered testimony purports to exculpate [appellant] from any involvement in the crime, there was no evidence presented at the PCRA hearing that establishes a specific strategy for failing to attempt to present Jacobs' testimony. As [appellant's] defense at trial was that he was not involved in the robbery, despite evidence to the contrary, Jacobs' testimony would not have been inconsistent with [appellant's] defense and there is no discernible reason not to offer the testimony unless Jacobs would have refused to testify.

PCRA court opinion, 12/11/13 at 8.

---

[5] We note that Attorney Ricciuti could not have been expected to introduce at trial the notarized statement of appellant and Jacobs if he never saw it or had it in his possession.

- 11 -

Despite the above, appellant has failed to prove that but for the error or omission of counsel, there is a reasonable probability that the outcome of his trial would have been different. Two eyewitnesses positively identified him as the man who held the gun to Lloyd H.'s head and threatened to kill him unless Daniel H. opened the safe. Also, appellant was viewed without any mask by those two individuals while he was fleeing the scene of the crime. Last, appellant was observed fleeing the crime scene with Jacobs, who had the cash and a gun, and was apprehended in the vicinity of the robbery within minutes of its perpetration wearing the clothing worn by the robber who threated Lloyd H. with the gun. Appellant's contention, that the outcome of the trial would have been different based on the testimony of Jacobs that appellant did not participate in the crime, is not supported by the record as there was overwhelming evidence that appellant was the second perpetrator. In light of this fact, appellant cannot show a reasonable probability that the outcome of his trial could have been different if only trial counsel had called Jacobs as a witness. *See Commonwealth v. Davis*, 554 A.2d 104, 112 (Pa.Super. 1989) (trial counsel not ineffective for failing to produce alibi witness where, even if witness were presented, no reasonable likelihood exists verdict would have been more favorable to defendant).

Appellant also argues that in the absence of Jacobs' testimony, Attorney Ricciuti should have introduced Jacobs' affidavit during trial under

Pa.R.E. 804(b)(3) as a statement against interest. However, Attorney Ricciuti testified he did not recall ever seeing the affidavit. (Notes of testimony, 3/18/13 at 4.)

In addressing this issue, the PCRA court explained:

> Jacob[s]' statement would not be admissible under Rule 804(b)(3) to the extent that the statement purports **to exculpate Petitioner**. Petitioner fails to establish how Jacob[s]' assertion that **Petitioner did not participate** in the crime constitutes a declaration **against Jacob[s]'** interest. Further, even assuming that some portion of the statement could be interpreted as a declaration against Jacob[s]' interest, such a finding does not lead to the conclusion that the entire statement would be admissible. A careful review of the statement indicates that the portion of the statement which purports to exculpate Petitioner is not admissible pursuant to Rule 804(b)(3).
>
> * * *
>
> Examining [] each individual statement made by Jacobs in his affidavit, there is no basis to find that the portion referring to Petitioner is a statement against interest by Jacobs and, therefore, admissible under the 804(b)(3) hearsay exception.
>
> Assuming, however, that the statement as a whole tended to expose Jacobs to criminal liability, 804(b)(3) further provides that, "a statement is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement." Petitioner has offered no evidence of corroborating circumstances clearly indicating the trustworthiness of the statement. On the contrary, the trustworthiness of the statement is called into question by the very fact that Petitioner admitted that he prepared the statement while both he and Jacobs were incarcerated and he presented [it] to Jacobs for his signature. It is also telling that

> despite the fact that Jacobs clearly had an accomplice in the robbery, he fails to disclose who the other actor was, if it was not Petitioner. Consequently, there are no corroborating circumstances which indicate the trustworthiness of the statement.

PCRA court opinion, 12/11/13 at 9-10 (emphasis in original).

Based on the above, we see no error in the PCRA court's determination that appellant's contention trial counsel was ineffective for failing to present the alleged affidavit of Jacobs at trial to be without merit.

In his second issue, appellant contends the PCRA court erroneously dismissed his claim that there was a violation of the Constitution which so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. There is no merit to this argument. Attorney Ricciuti's actions in failing to attempt to call Jacobs have not been shown to have adversely affected the outcome of the trial. Appellant failed to show that Jacobs would have testified had he been called. There was no proof of what Jacobs would have testified to other than the affidavit prepared by appellant. Accordingly, appellant has failed to establish a constitutional claim for ineffectiveness of counsel.

Order affirmed. Petition to withdraw granted.

J. S61004/14

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/3/2014

- 15 -